**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRENTON BOYD NEWSOME** | : | **Civil No. 3:12-CV-2475** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Kosik)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **TOBY CATONE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case comes before the court for a second statutorily mandated screening review of an amended complaint filed by the plaintiff, Brenton Newsome, an immigration detainee who is housed in the York County Prison pending his removal from the United States. (Docs. 13 and 15.) Newsome filed his original complaint with this court on December 11, 2012. (Doc. 1.) In this complaint, Newsome alleged that he suffered from an array of maladies, including chest pain, dizziness, constipation, a burning sensation when urinating, episodes of vomiting blood, a swollen abdomen, an infected urethra, pelvic pain, and a "75% loss of pubic hair." (Id.)

Upon medical screening at the prison, Newsome alleged that his concerns were discounted and ignored by a prison physician assistant, defendant Catone, who also allegedly demeaned the plaintiff, using racial epithets. Newsome further asserted that he lodged grievances about these medical matters to the warden, Mary Sabol, but Warden Sabol referred his medical concerns to medical staff for response, a course of conduct he found inadequate. On the basis of these allegations, Newsome initially sued Physician Assistant Catone, Warden Sabol, the U.S. Immigration Service, and the corporation that provides inmate medical services, Prime Care Medical Inc. (Id.) In his complaint, Newsome then sought specific amounts of unliquidated damages as compensation for these alleged injuries, demanding as much as $1,500,000 in compensatory and punitive damages. (Id.)

Along with this *pro se* complaint, Newsome filed a motion for leave to proceed *in forma pauperis.* (Doc. 2.) While we granted this motion to proceed *in forma pauperis*, as part of our legally-mandated screening of *pro se, in forma pauperis* cases, we carefully reviewed this complaint and concluded that, in its current form the complaint failed to state a claim upon which relief may be granted with respect to at least three of the defendants named in this action, Warden Sabol, the U.S. Immigration Service, and the corporation that provides inmate medical services, Prime Care Medical Inc. Accordingly, we recommended that the complaint be

dismissed as to these defendants without prejudice to Newsome filing an amended complaint which addresses the deficiencies identified in this Report and Recommendation. The district court adopted this recommendation, (Doc. 14.), and Newsome has now filed a motion for leave to amend his complaint, (Doc. 15.), along with a proposed amended complaint. (Doc. 13-1.)

Newsome's proposed amended complaint reflects that the plaintiff was mindful of our prior admonition that he should endeavor to identify persons who were directly responsible for acts which he alleges violated his constitutional rights. Thus, Newsome's amended complaint adds four individual defendants who, along with defendant Catone, are alleged to have directly neglected his medical needs–Phil Richardson, Joshua Reid and Henry Harrison. Newsome also deletes the U.S. Immigration Service as a defendant, recognizing the fact that sovereign immunity precludes a claim against this agency of the United States government. We believe, therefore, that Newsome should be given leave to amend his complaint to include claims against defendants Catone, Richardson, Reid and Harrison, and the amended complaint should be served upon these defendants.

However, Newsome's amended complaint continues to name various supervisory and corporate defendants, including Prime Care Medical, Inc., Warden Sabol, Thomas Decker, the Director of the Immigration Service, and Patricia Bennett,

an administrator for Prime Care. Upon review, we conclude that Newsome's amended complaint still fails to state a claim against these supervisory and corporate defendants upon which relief can be granted. Accordingly, we recommend dismissal of these defendants.

## II. Discussion

### A. Screening of *Pro Se* Amended Complaints–Standard of Review

Decisions regarding motions to amend pleadings rest in the sound discretion of the district court and will not be disturbed absent a abuse of that discretion. See e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001) That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15 of the Federal Rules of Civil Procedure. In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion to deny a motion to amend, Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001), and may deny a request:

> if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party. Adams, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court

> or when the plaintiff has had previous opportunities to amend. <u>Cureton</u>,
> 252 F.3d at 273 (citing <u>Adams</u>, 739 F.2d at 868; <u>Lorenz v. CSX Corp.</u>,
> 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of
> undue delay . . . will "focus on the movant's reasons for not amending
> sooner," <u>Cureton</u>, 252 F.3d at 273, and we will balance these reasons
> against the burden of delay on the District Court. <u>Coventry v. U.S. Steel</u>
> <u>Corp.</u>, 856 F.2d 514, 520 (3d Cir.1988).

<u>Bjorgung v. Whitetail Resort, LP, supra</u>, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.' <u>In re</u> <u>Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir.1997) ('<u>Burlington</u>'); <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. <u>Burlington</u>, 114 F.3d at 1434." <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). Moreover, a party seeking to supplement pleadings must act in a diligent fashion. Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them. <u>Rolo v. City Investing Co.</u> <u>Liquidating Trust</u>, 155 F.3d 644, 654 (3d Cir.1998)." <u>Krantz v. Prudential</u> <u>Investments Fund Management LLC</u>, 305 F.3d 140, 144 (3d Cir. 2002).

An assessment of whether an particular amendment to a complaint is futile entails an evaluation of whether "the complaint, as amended, would fail to state a claim upon which relief could be granted. <u>Burlington</u>, 114 F.3d at 1434." <u>Shane v.</u>

<u>Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000).  Therefore, in ruling upon a request for

leave to amend a complaint we should be guided by the benchmark standard for the

sufficiency of complaints; namely,  whether a *pro se* amended complaint fails "to

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint,

the United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in <u>Bell
> Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our
> opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir.
> 2008)]and culminating recently with the Supreme Court's decision in
> <u>Ashcroft v. Iqbal</u>  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than the
> possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel,

Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to dismiss."

<u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally

a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. As to The Supervisory and Corporate Defendants, Newsome's Amended Complaint Still Fails to State a Claim Upon Which Relief Can Be Granted

We believe that Newsome's amended complaint sufficiently states claims of direct involvement by certain officials in allegedly wrongful acts and find that Newsome should be given leave to amend his complaint to include claims against defendants Catone, Richardson, Reid and Harrison. However, as to the supervisory and corporate defendants named in this amended complaint, Prime Care Medical, Inc., Warden Sabol, the Director of the Immigration Service, Thomas Decker, and Patricia Bennett, an administrator for Prime Care, we believe that the amended

complaint is still flawed in ways which calls for the dismissal of these claims and parties.

In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that agency supervisors may be exposed to liability only in certain, narrowly defined, circumstances. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* . . . See <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of  evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.  See* <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)." <u>Jetter v. Beard</u>, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in many instances Newsome still does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading. To the extent that Newsome simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can Newsome sustain a supervisory liability claim against these officials by simply alleging in a talismanic fashion that they failed to train, oversee or supervise their subordinate employees. In this regard, we note that: " 'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. As the United States Court of Appeals for the Third Circuit has observed: "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice

or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Newsome has not sufficiently pled either of these theories of supervisory liability to support his current amended complaint. First, Newsome has not alleged well-pleaded facts showing that "the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010). Moreover, Newsome has not alleged well-pleaded facts which would establish a claim of supervisory liability grounded upon an assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm," Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010), since Newsome has not identified any particular policy which led to the various injuries which he alleges that he has suffered.

Furthermore, to the extent that Newsome's supervisory laibility claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances,

this claim also fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely

on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, in a case such as this, it is also well-established that non-medical correctional supervisors may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections

staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where non-medical corrections staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez, 2010 WL 569852, 7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006). Rather, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, as presently drafted, the plaintiff's amended complaint's claims against these supervisory defendants consist of little more than assertions of *respondeat*

*superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

Finally, while Newsome's amended complaint alleges colorable Eighth Amendment deliberate neglect claims against certain indidvual defendants employed by Prime Care, the amended complaint still fails to state a claim upon which relief may be granted against the corporate defendant named in this lawsuit, Prime Care Medical Inc. To the extent that the gravamen of this complaint is that the defendants violated the plaintiff's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs, Newsome faces an exacting burden in advancing this Eighth Amendment claim. To sustain such a claim, Newsome must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Newsome is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier,

182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly

where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, when a claim is brought against a corporate health care provider additional legal considerations come into play. It is well-settled that: "[a corporate health care provider] is not liable for constitutional violations committed by its employees, unless [the company] has adopted a policy, practice or custom that caused the constitutional violations alleged. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); see Woodward v. Corr. Med. Servs., 368 F.3d 917, 927 (7th Cir.2004)." Stankowski v. Farley, 251 F. App'x 743, 748 (3d Cir. 2007)(summary affirmance of dismissal). As one court has observed in this setting:

> Respondeat superior or vicarious liability cannot be a basis for [corporate] liability under 42 U.S.C. § 1983, therefore, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir.2003). [A corporation] can, however, be considered directly liable for the acts of an employee if those acts are deemed the result of a [corporate] policy or custom . . ., where the inadequacy of an existing practice is so likely to result in the violation of constitutional rights that [a corporation] can reasonably be said to have been deliberately indifferent to plaintiff's serious medical

need. See id. at 584 (citations omitted). " 'Policy is made when a decisionmaker possess[ing] final authority to establish ... policy with respect to the action issues an official proclamation, policy or edict.' " Miller v. Corr. Med. Sys., Inc., 802 F.Supp. 1126, 1132 (D.Del.1992) (alteration in original) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (citing Andrews, 895 F.2d at 1480; Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.1989)).

Austin v. Taylor, 604 F. Supp. 2d 685, 690 (D. Del. 2009). See Zheng v. Palakovich, 4:09-CV-1028, 2010 WL 1508521 (M.D. Pa. Apr. 13, 2010)(A private corporation contracting with a state cannot incur § 1983 liability by way of *respondeat superior*).

Judged by these legal guideposts, while Newsome has stated a colorable claim against certain individual defendants he still has not has recited sufficient facts which would give rise to an Eighth Amendment claim against Prime Care since he simply contends without further factual support that the "policies of Prime Care Medical Inc. was [sic] the window to Plaintiff becoming a victim of racial discrimination." (Doc. 13-1, ¶20.) This spare recital is little more than a talsimanic description of the elements of a cause of action, and does not adequately allege the touchstone for any Eighth Amendment claim against a corporate defendant, the existence of a specific corporate policy, practice or custom which is so well-settled and permanent as virtually to constitute law, and which caused the constitutional violations alleged.

Therefore, any Eighth Amendment claims against Prime Care Medical simply fail as currently pleaded by Newsome.

Finally, any medical malpractice claims advanced by Newsome also fail at present. To state a valid medical malpractice claim this complaint must comport with the state tort laws of Pennsylvania. In order to present a *prima facie* case of medical malpractice under Pennsylvania law, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." Simpson v. Bureau of Prisons, No. 02-2213, 2005 WL 2387631, at *5 (M.D.Pa. Sept. 28, 2005) This requirement is imposed upon malpractice plaintiffs like Newsome by Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing a valid certificate of merit along with this malpractice claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit
(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Thus, to the extent that Newsome wishes to bring a medical malpractice action, his failure to comply with Rule 1042.3 is a bar to this claim. In this regard, the controlling legal standards can be simply stated:

> Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard.'" Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which held that an analogous New Jersey statute was substantive law); Velazquez v. UPMC Bedform Mem'l Hosp., 328 F.Supp.2d 549 (W.D.Pa.2004). Courts may dismiss cases when a plaintiff fails to file a required certificate of merit. See, e.g., Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D.Pa.2007); McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that "failure to submit the certificate is a possible ground for dismissal by the district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints, and to *pro se* medical malpractice actions brought under state law. See Hodge v.

Dept. of Justice, 372 Fed. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file COM); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839, 2009 WL 1770146 (M.D. Pa. June 22, 2009). Therefore, Newsome's status as a *pro se* litigant cannot excuse him from compliance with the substantive state law when bringing this state law claim of malpractice. Id. Moreover, Pennsylvania caselaw construing this certificate of merit requirement has expressly extended the requirement to a wide array of malpractice claims like those brought here. See, e.g., Estate of Aranda, 987 A.2d 727 (Pa Super. 2009); Pollock v. Feinstein, 917 A.2d 875 (Pa. Super. 2007); Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778 (M.D.Pa. Aug. 13,2009)(construing Pennsylvania law).

Given the substantive nature of this requirement under Pennsylvania law, and its clear application to medical malpractice claims, it is recommended that Newsome's medical malpractice claim be dismissed. However, while the plaintiff's failure to comply with Rule 1042.3 requires dismissal of this malpractice claim, we note that the sanction imposed under state law for a violation of this rule, entry of a non pros by the prothonotary, has no precise analogue in the federal system. Thus, as least one federal court has held in this context that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." Bresnahan v.

<u>Schenker</u>, 498 F.Supp.2d 758, 762 (E.D. Pa. 2007)(quoting, <u>Scaramuzza v. Sciolla</u>, 345 F.Supp.2d 508, 511 (E.D. Pa. 2004). Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3, by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for then earlier non-compliance. <u>See</u> <u>Womer v. Hilliker</u>, 208 A.2d 269 (2006), <u>see also</u> Pa.R.C.P. No. 3051. Thus, Newsome may still have recourse to the courts on this claim, if he timely files a certificate of merit. However, until Newsome takes these steps, and complies with Rule 1042.3, we should dismiss this medical malpractice claim.

### III.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for leave to amend his complaint (Doc. 15.), be GRANTED, in part, and DENIED, in part as follows:

1.     IT IS RECOMMENDED that the motion be granted, and the amended complaint service upon defendants Catone, Richardson, Reid and Harrison.

2.    As for defendants Decker, Bennett, Sabol, and Prime Care Medical Inc., IT IS RECOMMENDED that the motion be DENIED, and the defendants be DISMISSED.

3. IT IS FURTHER recommended that any pendent state medical malpractice claims be dismissed without prejudice to the plaintiff's compliance with Rule 1042.3.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 16th day of May 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge